IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LATONYA WESLEY, <br><br>  Plaintiff, <br><br> *v.* <br><br> PNC BANK, et al., <br><br> Defendants. | CIVIL ACTION <br><br> NO. 19-5052-KSM |

## MEMORANDUM

**Marston, J.**                                                                                           **December 11, 2020**

Plaintiff Latonya Wesley brings claims against her employer, Defendant PNC Bank, and her supervisor, Defendant Suzanne Ratcliffe, for racial discrimination in violation of 42 U.S.C. § 1981; racial discrimination, hostile work environment, and retaliation in violation Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-2 *et. seq.* & § 2000e-3 *et. seq.*; racial discrimination in violation of the Pennsylvania Human Rights Act ("PHRA"), 43 Pa. Stat. and Cons. Stat. § 955 *et. seq.*; withholding a paycheck in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et. seq.*, and Pennsylvania's Wage Payment and Collection Law ("WPCL"), 43 Pa. Stat. and Cons. Stat. § 260.1; and intentional infliction of emotional distress ("IIED").  (Doc. No. 1 at pp. 6–18.)

PNC Bank and Ratcliffe have moved to dismiss the complaint, arguing that Wesley has not alleged that she suffered an adverse employment action, has failed to plead any facts showing a plausible claim for a hostile work environment based on racial harassment, and cannot pursue individual claims against Ratcliffe under Title VII.  (Doc. No. 21.)  Defendants also contend that Wesley's IIED claim is barred by the Pennsylvania Workers' Compensation Act ("WCA"),

which provides the exclusive remedy for work-related injuries, or in the alternative, Wesley fails to allege conduct that is sufficiently extreme or outrageous to state an IIED claim. (*Id.*)

Wesley filed an opposition, arguing that Ratcliffe's comments that Wesley would be "better off" at an inner city branch of PNC rose to the level of an adverse employment action and satisfies the severe or pervasive threshold required to state a hostile work environment claim. (Doc. No. 22.)[1] Defendants filed a reply (Doc. No. 23), and Wesley filed a sur-reply (Doc. No. 24).

The Court held oral argument on November 19, 2020.

For the reasons discussed below, the Court grants Defendants' motion.

## I. BACKGROUND

Accepting all of Plaintiff's allegations as true, the relevant facts are as follows. Wesley worked as a bank teller and lead supervisor at a PNC Branch located in Ephrata, Pennsylvania ("the Ephrata branch"). (Doc. No. 1 at ¶ 5.) Wesley is African American and was the only Black employee at the Ephrata branch. (*Id.* at ¶ 8.) Wesley reported to Ratcliffe, the general manager of the Ephrata branch. (*Id.* at ¶ 9.)

During Wesley's time working at the Ephrata branch,[2] Ratcliffe made a number of comments to Wesley about how she would be "better off" working in an inner city branch of

---

[1] We remind Plaintiff's counsel that Federal Rule of Civil Procedure 32(a) governs the formatting of briefs filed in federal court. Under Rule 32(a)(4), the text must be double spaced, though headings and footnotes may be single spaced. Plaintiff's briefs deviated from the Rule. (*See* Doc. Nos. 22, 24.) In the future, any filings Plaintiff's counsel makes in this Court must comply with the Federal Rules.

[2] We note that Plaintiff's allegations are very vague and she failed to include any relevant dates, rendering us unable to determine the timeline in our recitation of the facts. For example, Wesley failed to allege when she was first hired by PNC, when Ratcliffe began directing racist comments at her, how long Ratcliffe's harassment lasted, when Wesley filed her internal complaint, et cetera. Indeed, the *only* dates Wesley pleads in her complaint are the date on which her paycheck was withheld and the date on which the Equal Employment Opportunity Commission ("EEOC") issued its Right to Sue Letter. (*See* Doc. No. 1 at ¶¶ 20, 22.)

PNC.  (*Id.* at ¶¶ 10–14.)  Specifically, Ratcliffe told Wesley that she would be "better off" working at inner city branch because Plaintiff is Black and is "different."  (*Id.* at ¶¶ 11, 14.)  Ratcliffe also told Wesley that she would be "better off" at an inner city branch because Ephrata branch's customer base is comprised of "white conservatives," and because Wesley is "different" from her white co-workers.  (*Id.* at ¶¶ 10–12.)  Ratcliffe did not "pressure" Wesley's white co-workers "to move to another branch location because of their race."  (*Id.* at ¶ 19.)  Rather, when Ratcliffe spoke with other employees, she disparaged Wesley and made "racist" comments about Wesley.  (*Id.* at ¶ 15.)  Moreover, Ratcliffe advised Wesley that inner city branch managers "would have black children and/or grandchildren," like Wesley.  (*Id.* at ¶ 13.)

In addition, Ratcliffe explicitly discouraged Wesley from filing any complaints with PNC's corporate management, telling Plaintiff "it's best to take care of things amongst ourselves."  (*Id.*)  Nonetheless, Wesley registered a complaint[3] with Karen Reeser, a Senior Vice President and Regional Manager of PNC for the Lancaster Region.[4]  (*Id.* at ¶ 16.)

On August 22, 2019, Defendants retaliated against Wesley for complaining to Reeser by withholding her paycheck.  (*Id.* at ¶ 20.)  Wesley claims that her paycheck was withheld because she was erroneously classified in PNC's payroll system as out on medical leave.  (*Id.*)  Wesley later clarifies that Defendants did not permanently withhold her paycheck; rather, they "failed to

---

[3] Wesley does not provide a copy of the internal complaint, nor does she provide any detail as to the content of her complaint (i.e., which specific racist statements or acts she complained about).

[4] Wesley also alleges that her "requests for accommodation and/or cessation of the aforementioned hostile work environment, perpetuated by Defendant Suzanne Ratcliffe, have been routinely ignored."  (*Id.* at ¶ 17.)  But Wesley does not allege *what* requests she made, *when* she made those requests, or *to whom* she made those requests.  Presumably, Wesley means that she requested accommodations from Reeser when she filed her internal complaint—but the face of Plaintiff's complaint never makes that clear.  Further, Wesley never alleges who "routinely ignored" her requests.  Nor does she allege that she ever followed up with Reeser (or even spoke to Reeser) after registering her internal complaint.  The complete lack of details in the complaint makes it quite challenging for the Court to now construct a cohesive statement of facts.  Even though the Court must view the facts in the light most favorable to Plaintiff, the Court should not have to—and will not—play a guessing game about the facts.

timely pay Plaintiff her regularly scheduled paycheck." (*Id.* at ¶ 104.)

Wesley filed a charge of discrimination with the EEOC, and the EEOC issued a right to sue letter on July 31, 2019—approximately one month *before* Wesley's paycheck was withheld. (*Id.* at ¶ 22.)

On October 28, 2019, Wesley initiated the instant lawsuit, alleging that Defendants discriminated against her and subjected her to a hostile work environment on the basis of her race; retaliated against her for complaining to Reeser; violated the FLSA and WPCL by withholding her paycheck; and intentionally inflicted emotional distress. (*See generally id.*)

## II.    STANDARD OF REVIEW

In deciding a motion to dismiss under Rule 12(b)(6), the court must determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although we must accept as true the allegations in the complaint, we are not "compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Castleberry v. STI Grp.*, 863 F.3d 259, 263 (3d Cir. 2017) (quotation marks omitted).

## III.   DISCUSSION

As a preliminary matter, we note that in her opposition brief, Wesley withdraws factual references to her paycheck (i.e., that Defendants failed to timely pay her).[5] Wesley also

---

[5] As discussed above, although Plaintiff initially alleges in her Complaint that her paycheck was withheld, later on, she clarifies that Defendants did not pay her on time. Moreover, in her response brief, she frames the issue as her paycheck being "delay[ed]."

4

withdraws her retaliation claim (Count IV), her FLSA and WPCL claim (Count VI), and her IIED claim (Count VII). (Doc. No. 22 at p. 5.)  Therefore, Counts IV, VI, and VII are withdrawn.

Wesley also concedes that Ratcliffe may not be held individually liable under Title VII and withdraws her Title VII claims against Ratcliffe (Counts II and III—racial discrimination and hostile work environment, respectively) of her Complaint.  (*Id.* at p. 6.)[6]  Accordingly, we dismiss these claims against Ratcliffe with prejudice.

This leaves us with two[7] overarching issues to consider:  (1) whether Wesley has sufficiently alleged that she suffered an adverse employment action, as required to state a racial discrimination claim under Title VII, § 1981, and the PHRA, and (2) whether Wesley has sufficiently alleged facts showing that she was subjected to severe or pervasive conduct, as needed to state a hostile work environment claim under Title VII and the PHRA.  We address

---

[6] Wesley maintains that she may still hold Ratcliffe individually liable for her § 1981 and PHRA claims (Counts I and V).  We do not address the merits of this argument, given that we find dismissal is warranted on those claims.

[7] In their motion to dismiss, Defendants also argue that Plaintiff's PHRA claim has not been administratively exhausted because she filed her complaint within two months of receiving her Right to Sue letter from the EEOC.  (*See* Doc. No. 21 at pp. 18–19.)  43 Pa. Stat. § 962(c)(1) provides:

> If within one (1) year after the filing of a complaint with the Commission, the Commission dismisses the complaint or has not entered into a conciliation agreement to which the complainant is a party, the Commission must so notify the complainant.  On receipt of such a notice the complainant shall be able to bring an action in the courts of common pleas of the Commonwealth based on the right to freedom from discrimination granted by this act.

We do not address the parties' arguments as to whether the PHRA claim is administratively exhausted now at the time of ruling (a year after Plaintiff filed her complaint and a year and three months after Plaintiff filed her charge) and/or whether Plaintiff needs to re-file an amended complaint because, as discussed below, we find that Plaintiff has failed to state a claim for racial discrimination or hostile work environment under the PHRA.  (To that end, we note that although the heading of Count V in the complaint is not explicit, it appears that Plaintiff brings her PHRA claim on the same bases as the Title VII and § 1981 claims—i.e., is asserting a PHRA claim for hostile work environment and racial discrimination).

each in turn.

### A. *Plaintiff's Race Discrimination Claims Must Be Dismissed Because Plaintiff Has Not Alleged an Adverse Employment Action*

Defendants argue that Wesley's race discrimination claims must be dismissed because Wesley has failed to allege that she suffered an adverse employment action because of her race. (Doc. No. 21-1 at pp. 11–14.) We agree.

To state a *prima facie* case for discrimination,[8] a plaintiff must show that (1) she is a member of a protected class, (2) she was qualified for the position, (3) she suffered an adverse employment action, and (4) the action occurred under circumstances that could give rise to an inference of intentional discrimination. *Frazier v. Exide Tech.*, Civil Action No. 11-1863, 2016 WL 6600262, at *10 (E.D. Pa. Nov. 8, 2016) (citing *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 410–11 (3d Cir. 2014)). "The Supreme Court has interpreted an 'adverse or tangible employment action' to mean 'a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" *Remp v. Alcon Labs., Inc.*, 701 F. App'x 103, 106–07 (3d Cir. 2017) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 261 (1998)); *see also Barnett v. N.J. Transit Corp.*, 573 F. App'x 239, 244 (3d Cir. 2014); *Canete v. Barnabas Health Sys.*, 718 F. App'x 168, 169 (3d Cir. 2018) ("An adverse employment action sufficient for [the plaintiff's] discrimination claims to proceed must be serious and tangible enough to alter an

---

[8] We analyze Plaintiff's § 1981 (Count I), Title VII (Count II), and PHRA (Count V) racial discrimination claims together here because they are subject to the same legal standards. *See Greer v. Mondelez Global*, 590 F. App'x 170, 172 n.4 (3d Cir. 2014) (explaining that "the substantive elements of an employment discrimination claim brought under § 1981 are identical to those brought under Title VII" (citations omitted)); *Atkinson v. LaFayette Coll.*, 460 F.3d 447, 464 n.6 (3d Cir. 2006) ("Claims under the PHRA are interpreted coextensively with Title VII claims." (citing *Kelly v. Drexel Univ.*, 94 F. 3d 102, 105 (3d Cir. 1996))).

employee's compensation, terms, conditions, or privileges of employment." (quotation marks and citations omitted)).  In addition, the Third Circuit has "added other employment decisions to this list of adverse employment actions," including placing an employee in a potentially less profitable sales position; failing to rehire someone; suspending an employee without pay; and revoking a person's office, dismissing her secretary, and assigning her less work." *Remp*, 701 F. App'x at 107 (citations omitted).  At bottom, "[t]he action must be an actual adverse action, as opposed to conduct that the employee generally finds objectionable." *Salvato v. Smith*, Civil Action No. 13-2112, 2013 WL 3431214, at *7 (E.D. Pa. July 9, 2013) (quotation marks and citations omitted).

Here, Wesley has withdrawn all of her paycheck-related allegations.  (*See* Doc. No. 22 at p. 5.)  Thus, we do not consider whether an untimely paid paycheck may constitute an adverse employment action.  Also, as Defendants rightly point out (*see* Doc. No. 21-1 at p. 11), Wesley's litany of allegations in paragraph 44 of her complaint are merely boilerplate.  (*See* Doc. No. 1 at ¶ 44 ("Defendants subjected the Plaintiff to adverse tangible employment actions – such as significant changes in Plaintiff's employment status, discipline, denial of training, failure to promote, reassignment with significant different job responsibilities, and/or decisions causing changes in terms, conditions, benefits, and/or privileges of the Plaintiff's employment benefits.").)  Wesley fails to allege *any* facts sufficient to support those conclusory assertions. As such, these allegations do not support Wesley's position that she has suffered an adverse employment action.

Thus, all that remains are the following factual allegations:

- Ratcliffe told Wesley that she would be "better off" working in an inner city branch because she is African American; because she is "different"; because she is different from her other non-Black co-workers; because Ephrata is populated by white conservatives, unlike Plaintiff; and because managers of inner city branches would

have Black children and grandchildren, like Plaintiff. (*Id.* at ¶¶ 10–14.)[9]

- Ratcliffe made similar racist comments about Wesley to other employees at the Ephrata branch. (*Id.* at ¶ 15.)

- Ratcliffe discouraged Wesley from registering any internal complaints with PNC's corporate management, advising her: "[I]t's best to take care of things amongst ourselves." (*Id.* at ¶ 15.)

- Wesley complained to Reeser (*id.* at ¶ 16), and Defendants routinely ignored Wesley's requests for accommodation and/or cessation of a hostile work environment (*id.* at ¶ 17.)

- Ratcliffe did not "pressure" other employees to move to another branch location due to their race or ethnicity. (*Id.* at ¶ 19.)

Wesley argues that she has therefore identified multiple incidents of "explicit adverse action." (Doc. No. 22 at pp. 5–6.) But, significantly, Wesley does not cite to *any* case law showing that any of the above acts—either in isolation or taken together—constitute an adverse employment action.

Wesley also alleges, in a conclusory fashion, that Defendants' conduct "interfere[d] with her ability to work at the Ephrata branch" and "her right to contract with" PNC. (Doc. No. 1 at ¶¶ 21; *see also id.* at ¶ 28.) And, in her response brief, she maintains that "the Complaint at issue specifically delineates an entire wheat field of adverse employment actions that have denigrated the Plaintiff and the terms and conditions of her employment, in seven (7) specific, severe and pervasive respects, namely that Defendant Suzanne Ratcliffe has told the Plaintiff that she would be 'better off' working in an inner city branch for PNC Bank." (Doc. No. 22 at p. 5.) In doing so, Wesley appears to argue that Ratcliffe's discriminatory statements amounted to a change in

---

[9] From the face of the complaint, it is unclear whether Ratcliffe made a single "better off" statement, or whether Ratcliffe made numerous "better off" statements over a period of time. (*See id.*) However, in her opposition brief, Wesley seems to maintain that these were all separate occurrences. (*See* Doc. No. 22 at p. 5.) Further, during oral argument, Wesley's counsel represented that "they were a number of separate incidents" though he "[didn't] know how many." (Oral Argument Tr. at 11:17–18.)

8

the terms or conditions of her employment.[10]

Again, Wesley cites no case law to support this contention in her response. (*See* Doc. No. 22 at p. 6.) As Courts in this District have pointed out on numerous occasions, "unnecessary derogatory comments do not rise to the level of adverse employment actions." *See, e.g.*, *McFalls v. BrightView Landscapes, LLC*, Civil Action No. 18-2871, 2020 WL 1922828, at *6 (E.D. Pa. Apr. 21, 2020) (concluding that the discriminatory comments the plaintiff's supervisor made did not rise to the level of an adverse employment action); *Rosati v. Colello*, 94 F. Supp. 3d 704, 714 (E.D. Pa. 2015) (finding that the supervisor's derogatory comments to plaintiff about whether she was "getting fixed" or "keeping the baby," as well as comments made during another incident, were not adverse employment actions); *Petro-Ryder v. Capt. Jacqueline Pittman*, Civil Action No. 15-2908, 2015 WL 8731623, at *7 (E.D. Pa. Dec. 11, 2015) ("[The plaintiff] claims [her supervisor] yelled at her and degraded her in front of other officers by saying 'she was a weak supervisor' and had to be 'trained like an 8-year old.' . . . These comments, no matter how unpleasant, do not constitute an adverse employment action."); *Middleton v. Deblasis*, 844 F. Supp. 2d 556, 565–66 (E.D. Pa. 2011) (rejecting the plaintiff's argument that degrading and unprofessional remarks constituted an adverse employment action, and explaining that "the Third Circuit has held that unnecessary derogatory comments do not rise to the level of adverse employment actions. This is so because such comments do not implicate the employee's

---

[10] During oral argument, the Court asked Plaintiff's counsel, to identify the adverse employment action. Wesley's counsel responded, "That the supervisor was trying to push a Black employee out the door to an inner city branch." (Oral Argument Tr. at 14:4–6; *see also id.* at 21:1–6 ("My client lives near the Ephrata location. She chose to work there for proximity purposes. And then her immediate supervisor is suggesting that she go out the door and go elsewhere because she would be more comfortable because of her race. That's [the adverse employment action], Judge.").) Again, Plaintiff's counsel did not provide *any* authority or case law to support the contention that Ratcliffe's conduct towards Wesley actually amounted to an adverse employment action. Further, Plaintiff does not plead in her complaint (nor appear to argue in her briefs) that she was in fact pushed out (i.e., constructively discharged, transferred, or terminated).

compensation, terms, conditions, or privileges of employment, deprive[] him or her of employment opportunities or adversely affect[] his or her status as an employee" (quotation marks and citation omitted)).  Moreover, the Third Circuit has held that certain discriminatory conduct, even in conjunction with racially insensitive comments, did not amount to a change in the terms or conditions of the plaintiff's employment.  *See Woodard v. PHB Die Casting*, 255 F. App'x 608, 609–10 (3d Cir. 2007) (concluding that the plaintiff failed to show that he was subject to an adverse employment action and holding that the plaintiff's allegations about racist graffiti in the workplace and the employer's failure to promptly remove it, in conjunction with co-workers' racially insensitive comments, were "not enough for a trier of fact to conclude that discriminatory conduct in the workplace amounted to a change in the terms or conditions of [the plaintiff's] employment").

Finally, we note that in her reply brief, Plaintiff only cites to a single case, *Castleberry v. STI Grp.*, and asserts that "[a]lthough the Plaintiff has alleged at least seven (7) 'Better Off' racist comments from Defendant Ratcliffe, [*Castleberry*] establishes that only one will do, so long as it is 'severe' or 'pervasive.'"  (*See* Doc. No. 24 at pp. 1–2.)  However, Plaintiff does not explain how *Castleberry* supports her argument that Ratcliffe's racist comments constituted an adverse employment action.

To the extent that Plaintiff thinks that *Castleberry* supports her contention that she has alleged an adverse employment action, Plaintiff is mistaken.  In *Castleberry*, the Court clarified the legal standard for pleading a hostile work environment claim.  *See* 863 F.3d at 264 ("Thus we clarify.  The correct standard is 'severe or pervasive.'  Indeed, the distinction means that 'severity' and 'pervasiveness' are alternative possibilities:  some harassment may be severe enough to contaminate an environment even if not pervasive; other, less objectionable, conduct

will contaminate the workplace only if it is pervasive." (quotation marks and citations omitted)). The Third Circuit did not comment on what types of conduct amounted to an adverse employment action. Indeed, the adverse employment action in *Castleberry* could not have been more clear-cut or straightforward—the plaintiffs had been fired. *Id.* at 262.

In sum, Wesley does not allege that she was terminated or that she was constructively discharged. Wesley does not allege that her benefits were significantly reduced or that she was subject to a demotion, nor does she allege that she was reassigned to significantly different job duties. *See Barnett*, 573 F. App'x at 244. Wesley does not allege that she failed to receive a promotion. *See id.* Although Wesley alleges that Ratcliffe told her she should transfer to an inner city branch, Wesley never alleges that a transfer ever transpired. *Cf. Jones*, 198 F.3d at 411–12 ("We have held that employment decisions such as transfers and demotions may suffice to establish the third element of a plaintiff's prima facie case [i.e., adverse employment action]."). And, as discussed above, Wesley fails to allege facts that otherwise illustrate a change in the terms or conditions of her employment.

Although we condemn Ratcliffe's completely inappropriate comments, Wesley has not alleged a tangible adverse employment action and, accordingly, we grant Defendants' motion to dismiss her race discrimination claims.

    **B.** ***Plaintiff's Hostile Work Environment Claim Is Dismissed Because Plaintiff Has Failed to Plead Facts to Show that Defendants' Conduct was Sufficiently Severe or Pervasive.***

Defendants also argue that Wesley's hostile work environment claim should be dismissed because she has failed to allege sufficient facts to show that she was subjected to race-based conduct that was severe or pervasive enough to alter the conditions of her employment and create an abusive working environment. (Doc. No. 21-1 at pp. 15–18.)

To succeed on a hostile work environment claim, a plaintiff must establish: "(1) [she]

suffered intentional discrimination because of [her race]; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person in like circumstances, and (5) the existence of *respondeat superior* liability." *Mandel v. M&Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013). As to the second element, courts have emphasized time and again that "[h]ostile work environment harassment must be pervasive or severe enough to alter the conditions of employment and create an abusive working environment." *See Bellamy v. Waterfront Square Condos.*, Civil Action No. 12-6618, 2013 WL 607848, at *5 (E.D. Pa. Feb. 19, 2013) (citing *Meritor Sav. Bank FSB v. Vinson*, 477 U.S. 57, 61 (1986)) (quotation marks omitted); *see also Brooks v. CBS Radio*, 342 F. App'x 711, 776 (3d Cir. 2009) ("It is well established that to provide the second element of a hostile work environment claim, a plaintiff must show that his work was 'permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment'" (citation omitted)).

Therefore, a plaintiff may not rely upon "casual, isolated, or sporadic incidents to support [her] claim of hostile work environment harassment." *Salvato*, 2013 WL 3431214, at *10 (citation omitted). "Occasional insults, teasing, or episodic instances of ridicule are not enough; they do not 'permeate' the workplace and change the very nature of the plaintiff's employment." *Brooks*, 342 F. App'x at 777 (quotation marks and citation omitted). To determine whether a work environment is hostile, courts consider "the totality of the circumstances," including "the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating or a mere offensive utterance, and whether it reasonably interferes with an employee's work performance." *Tolani v. Upper Southampton Twp.*, 158 F. Supp. 2d 593, 596–

97 (E.D. Pa. 2001) (quotation marks and citation omitted).

Here, Wesley has not pleaded any specific facts to enable us to determine the pervasiveness of Defendants' allegedly discriminatory conduct. Indeed, as we noted above, Wesley does not provide *any* relevant dates, nor does she allege the frequency with which Ratcliffe made racist comments.[11] Even if Ratcliffe made "better off" comments on seven separate occasions (as Plaintiff appears to argue in her briefs (*see* Doc. No. 22 at p. 7; Doc. No. 24 at p. 1), despite the fact that her counsel admitted he did not know how many separate incidences there were (*see* Oral Argument Tr. 11:17–18)), Wesley has failed to allege any facts that would illustrate that the conduct was indeed pervasive in this particular context.

Although Wesley is correct that even a single isolated incident may support a hostile work environment claim if that event was adequately severe (*see* Doc. No. 24 at p. 1 (citing *Castleberry*, 863 F.3d at 264); *Castleberry*, 863 F.3d at 264 (explaining that the analysis is "context-specific" as to whether in a given case a single incident will suffice)), Wesley has similarly failed to allege facts showing that Defendants' conduct was severe.[12] Even though Wesley alleges, in a conclusory manner, that the terms and conditions of her employment were

---

[11] For example, were all the "better off" comments made in a single conversation? In the same day? Over the course of many days? Months? Years? Were the comments sporadic, or did she make the same comments repeatedly? We ask these questions for Plaintiff's counsel's edification—these are the types of questions courts routinely consider when analyzing hostile work environment claims and, in particular, in whether the conduct was sufficiently pervasive. Yet, here Wesley has failed to allege any facts to enable us to address pervasiveness here.

[12] *Castleberry* is the only case Wesley relies on to support her hostile work environment argument (*see* Doc. Nos. 22, 24), and *Castleberry* is not even an analogous case. In *Castleberry*, the plaintiffs "alleged that their supervisor used a racially charged slur in front of them and their non-African American coworkers," and "[w]ithin the same breath," threatened termination (which ultimately occurred). 863 F.3d at 265–66. The Third Circuit held that this single incident constituted severe conduct. *Id.* In the alternative, the plaintiffs could also meet the pervasive prong because the plaintiffs alleged that "on several occasions their sign-on sheets bore racially discriminatory comments and that they were required to do menial tasks while their white colleagues (who were less experienced) were instructed to perform more complex work." *Id.* at 266.

affected, the only specific facts she alleges are those relating to Ratcliffe's "better off" comments and Ratcliffe's advice that Plaintiff not complain to corporate management. Wesley also alleges that Defendants "routinely ignored" her "requests for accommodations" (*see* Doc. No. 1 at ¶ 17) but that is not specific either—she does not explain when she made those requests for accommodations, to whom she made those requests, or what accommodations she requested.

*Bellamy v. Waterfront Square Condominiums*[13] is instructive. There, the plaintiff pled that her supervisor referred to her and other Black employees as "you people," "refused to speak with Black residents and instead directed their questions and concerns to Plaintiff or [other] Black employees," "attempted to eliminate Martin Luther King Day as an observed holiday," and "expressed contempt for its inclusion as a holiday." 2013 WL 607838, at *5. The court granted the defendants' motion to dismiss the hostile work environment claim, reasoning that "[a]bsent any allegations concerning the frequency of [the supervisor's] alleged offensive remarks or specific facts from which the Court may infer that [the supervisor's] conduct unreasonably interfered with plaintiff's performance at work," it could not find that the conduct was "sufficiently severe and pervasive to evidence the requisite change in the conditions of plaintiff's work environment." *Id.*

So too here. Absent any allegations concerning the frequency of Ratcliffe's alleged offensive remarks or specific facts from which we can infer that Defendants' conduct unreasonably interfered with Wesley's performance at work, we cannot find that Defendants'

---

[13] During oral argument, the Court asked Plaintiff's counsel whether he could cite to any cases that supported his position that Defendants' conduct rises to the level of severe or pervasive. (*See* Oral Argument Tr. at 12:25–13:8.) In response, Plaintiff's counsel did not cite to a single analogous case. (*Id.* at 13:9–25.) Rather, Plaintiff's counsel merely attempted to distinguish from the cases that Defendants' counsel cited by arguing that, unlike this case, "none of those cases had any adverse employment actions." (*Id.*) But Plaintiff cannot distinguish on those grounds because, for the reasons we explained above, Plaintiff has not pled a tangible adverse employment action.

conduct was sufficiently severe or pervasive. Thus, we dismiss Wesley's hostile work environment claim.

### C. Costs

Last, Defendants argue in their reply brief that they should be awarded fees and costs pursuant to 28 U.S.C. § 1927 for their unnecessary briefing of Counts VI (FLSA and WPCL) and VII (IIED). (Doc. No. 23 at pp. 4–5.) Plaintiff's counsel does not address this issue in the sur-reply. (*See generally* Doc. No. 24.)

Section II.B.1. of this Court's Policies and Procedures provides: "Before filing a motion pursuant to Fed. R. Civ. P. 12(b)(6), counsel shall first contact opposing counsel to discuss the substance of the contemplated motion and to provide an opportunity to cure any alleged pleading deficiencies." Defendants argue that during the parties' meet and confer, "Plaintiff conceded that her FLSA, WPCL, and IIED claims were not viable as pled, but offered to voluntarily dismiss those claims *only if* PNC agreed to forego filing a 12(b)(6) motion to dismiss her Title VII and Section 1981 claims." (Doc. No. 23 at p. 5.) Defendants did not agree to do so, and then filed a motion to dismiss *all* of Plaintiff's claims. (Doc. No. 21.) In her response brief, Plaintiff then immediately withdrew those same three claims. (*Compare* Doc. No. 22 at p. 5 (withdrawing FLSA, WPCL, and IIED claims), *with* Doc. No. 21-1 at p. 26 (Plaintiff's counsel email stating, "I'll agree to withdraw the PHRA, IIED, FLSA, and WPCL claims without prejudice . . . In exchange for the aforementioned, you'll agree to file a simple answer (and forego a 12(b)(6) to the remaining Title VII claims.").)

Under § 1927, a court may require "any attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously . . . to satisfy personally the excess costs, expenses, attorneys' fees reasonably incurred because of such conduct."

Defendants did not cite to any case law supporting their position. (Doc. No. 23.)

15

Defendants later explained that they did not do so because their claim for fees and costs "arose under this Court's particular meet and confer requirement." (Oral Argument Tr. at 9:21–23; *see also id.* at 10:11–14 ("We could not find any case law specific on that issue because it is under this Court's particular rules governing the meet and confer requirement.").)

Given that Defendants argue for sanctions against Plaintiff's counsel under § 1927 in their reply, the failure of Plaintiff's counsel to address this issue in his sur-reply is troubling. Although Plaintiff's counsel did not specifically concede in his email to Defendants' counsel that the FLSA, WPCL, and IIED claims were not viable (*see* Doc. No. 21-1 at p. 46), Plaintiff's counsel did agree to withdraw those claims if Defendants gave him something in return (*id.*), and then he withdrew those claims immediately after Defendants filed their motion to dismiss (*see* Doc. No. 22 at p. 5), all of which suggests Plaintiff's counsel believes those claims are not viable, as presently pled in the Complaint. We agree with Defendants that this suggests that Plaintiff's counsel did not engage in the meet and confer in good faith. Although we admonish Plaintiff's counsel for proceeding in such a manner, we do not find that Defendants are entitled to fees and costs under § 1927 as a result.

### IV.  CONCLUSION

Plaintiff has withdrawn the retaliation, FLSA and WPCL, and IIED claims. We grant dismissal of the Title VII claims asserted against Ratcliffe in her individual capacity with prejudice, as those claims are not permitted by law.

We dismiss Plaintiff's race discrimination and hostile work environment claims without prejudice, and with leave to amend the claims set forth in those counts only. *See* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). Counsel is advised that any amended complaint shall be consistent

with this Memorandum.

An appropriate order follows.